Lamneck, J.
The evidence submitted at the trial discloses that the collision occurred in open country at a crossing of a public highway and the railroad tracks. Two of plaintiff’s witnesses lived approximately one-half mile south of the railroad crossing. One of such witnesses testified that he heard no whistle or bell prior to the collision and no sound resulting from the collision. Another of these witnesses testified on cross-examination that he was just coming out of a barn when he heard the train bumping along the rails, and the other was inside his house at the time of the collision. Three employees of the railroad, riding in the lead locomotive at the time of the collision, testified that the bell was ringing and the whistle blowing for the crossing, and two employees riding on the second locomotive testified that they heard the whistle blowing.
In a railroad crossing collision case, negative testimony is proper where it tends to prove that bells were not rung or whistles sounded. Such testimony may be by witnesses who were near the crossing at the time of the accident and to the effect that they did not hear any bell or whistle. See Hocking Valley Ry. Co. v. Wykle, Jr., a Minor, 122 Ohio St., 391, 397, 171 N. E., 860, and Cincinnati, Indianapolis, St. Louis & Chicago *310 Rd. Co. v. Howard, 124 Ind., 280, 24 N. E., 892, 19 Am. St. Rep., 96, 8 L. R. A., 593.
However, such testimony to have any probative value must be by witnesses who were in a position to know or hear. There was no conflict of evidence in the instant case requiring submission of the case to a jury, as there was positive evidence that bell and whistle signals were given and negative testimony by two witnesses, who were indoors and approximately one-half mile south of the crossing, that they did not hear such signals or the noise of the collision.
The trial court and the Court of Appeals concluded that no substantial evidence was produced to prove that the proper signals were not given. This court agrees with that conclusion.
This brings us to the question of speed. The trial court and the Court of Appeals held that there was sufficient evidence to support a finding by the jury that under all the surrounding circumstances the train was being operated at an unlawful rate of speed.
Four of the five railroad employees, above referred to, testified that the speed of the locomotives was not in excess of 35 miles per hour. One testified that when he first saw the automobile it was near the crossing and that it had either stopped or almost stopped and then darted out in front of the locomotives. Another testified he saw the automobile come to the crossing, stop, and then start up again when the locomotives were approximately 50 feet away. There is substantial evidence that the accident occurred about noon, that the day was foggy and misty, and that the tracks were wet from rain; mist, and oil as a result of the collision. There is no other specific evidence in the record pertaining to the rate of speed at the time of the collision. There is evidence that the locomotives ran one-half to three-quarters of a mile before stopping, and that the headlight on the lead locomotive was on at the time.
*311 In New York, Chicago & St. Louis Rd. Co. v. Kistler, 66 Ohio St., 326, 64 N. E., 130, the third paragraph of the syllabus reads as follows:
“In the absence of a statute regulating the rate of speed of railroad trains, it is not negligence for a railroad company to run its trains, in the open country, at such rate of speed as those in charge of the same may deem safe to the transportation of passengers and property, unless there are facts and circumstances which, when taken in connection with a high rate of speed, would make such speed an element or factor in constituting negligence, and in such cases such facts and circumstances should be pleaded.”
The General Assembly of Ohio has not enacted legislation pertaining to the rate of speed of trains in the open country. Under the Kistler case, it,' therefore, becomes necessary in this case to determine whether, in connection with the other facts and circumstances, the speed of the locomotives constituted negligence on the part of the railroad.
In the Kistler case, in the opinion it is stated on page 334:
“As there are road crossings in the country every few miles, it is inconsistent with proper speed of transportation, that trains should slack up for such crossings. Safety is secured to persons at such crossings by the observance of the statutory signals, and such signals being given, the train is not limited as to speed.”
It is also the general rule that, in the absence of legislation, no rate of speed of a railroad train approaching a crossing is, of itself, negligence. See 44 American Jurisprudence, 751, Section 511, citing a long line of cases.
The plaintiff contends that a certain speed of a train in the open country under conditions of fog and rain may constitute negligence which may be the proximate *312 cause of an injury, even in the absence of a statute regulating speed.
The fact that weather conditions were adverse does not in and of itself impose upon a railroad liability for negligence. The speed at which a train was moving may become an essential element in determining whether a railroad was negligent in the operation of its train in the open country, where the view of the track was obscured by fog, rain, mist, snow or storm, and no warning signals were given. But in the instant case, the warning signals were given, the headlight of the lead locomotive was on and, although the day was foggy and misty at the time of the collision, the evidence is uncontradicted that there was visibility from one-half to two miles.
If excessive speed is a factor to be considered in a case of claimed negligence in the operation of a train in the open country over a road crossing, there is no substantial evidence in this ease tending to prove that the locomotives were traveling at a high rate of speed. Four trainmen testified that the speed was not in excess of 35 miles per hour. There is also evidence that the locomotives ran one-half to three-quarters of a mile before stopping. Although the distance a train travels after a collision at a grade crossing may have some bearing as to the rate of speed, there is nothing in the record here by way of expert testimony to indicate what speed may be inferred from the distance traveled after the collision.
It is also contended by the plaintiff that the vision of the driver of the automobile was obstructed for a certain distance by a relay box about 75 feet from the crossing. The undisputed evidence is that this relay box was four feet wide, one and one-half feet deep and five or six feet high. This could not possibly affect the vision of the driver of an automobile to the extent that it would obscure all parts of two locomotives attached together.
*313 It is our opinion that there is no substantial evidence in the record to prove that the railroad was negligent in either failing to give proper warning signals or in that it was operating its locomotives at an excessive rate of speed under the conditions then and there existing.
The motions for an instructed verdict and for judgment notwithstanding the verdict were improperly overruled.
The judgment of the Court of Appeals is reversed and final judgment is rendered for the defendant railroad.

Judgment reversed.

W EYGANDT, C. J., MlDDLETON, TaET, HaRT, Zimmerman and Stewart, JJ., concur.